**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| NNEKA M. ROBINSON,<br>Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:25-CV-689-JEM |
| | ) | |
| FRANK BISIGNANO, Commissioner of the Social Security Administration,<br>Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Nneka M. Robinson on August 11, 2025, and Plaintiff's Opening Brief [DE 17], filed November 12, 2025. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On February 13, 2026, the Commissioner filed a response, and Plaintiff filed her reply on March 4, 2026. For the reasons set forth below, the Court remands the Commissioner's decision.

## I. Background

On June 26 and 30, 2023, Plaintiff filed applications for benefits alleging that she became disabled on December 31, 2020. Plaintiff's applications were denied initially and on reconsideration. On April 10, 2025, an Administrative Law Judge ("ALJ") held a telephonic hearing at which Plaintiff testified, with an attorney, along with a vocational expert ("VE"). On April 17, 2025, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2023.

2. The claimant has not engaged in substantial gainful activity since December 31, 2020, the alleged onset date.

3. The claimant has the following severe impairments: bipolar disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), obesity, borderline personality disorder, reactive airway disease, and right ankle instability or sprain, variously diagnosed as arthralgia.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except light exertional level, and no climbing ladders, ropes, and scaffolds; occasional climbing ramps and stairs; occasional crouching, crawling, kneeling, stooping, and balancing, no concentrated exposure to extreme heat (over 90 degrees), extreme cold (under 30 degrees), or atmospheric conditions. No exposure to environmental hazards such as high exposed places and moving mechanical parts. Limited to understanding, remembering, and carrying out simple instructions. This individual can have occasional interaction with supervisors outside the training period. Limited to occasional interactions with coworkers, To limit the duration and intensity of interactions with coworkers, there should be no tandem work or team tasks. No interaction with the general public. No fast-paced production work or work that requires hourly quotas but can meet end of the day quotas. Can handle occasional changes in a routine setting. The claimant is further limited in that there should be no driving as a work task. She can work in no more than a moderate noise level as defined by the Selected Characteristics of Occupations ("SCO"). She should have no concentrated exposure to bright light.

6. The claimant has no past relevant work.

7. The claimant was a younger individual age 18-49 on the alleged disability onset date.

8. The claimant has at least a high school education.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, since December 20, 2021, through the date of the ALJ decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 6]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ "will reverse an ALJ's decision only if it is the result of an error of law or if it is unsupported by substantial evidence." *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023). "A reversal and remand may be required, however, if the ALJ committed an error of law, or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). At a minimum, "[a]n ALJ must provide an adequate 'logical bridge' connecting the evidence and [the] conclusions, but an ALJ's opinion need not specifically address every single piece of evidence." *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

## III. Analysis

Plaintiff argues that the ALJ erred in analysis of the medical opinions of record in that the

ALJ provided an illogical assessment of the claimant's limitations and failed to seek a medical expert's interpretation of the evidence. The Commissioner argues that the ALJ's analysis was sufficient and her decision was supported by substantial evidence.

In particular, Plaintiff argues that the ALJ erred in her evaluation of the significance of the psychological evidence and did not identify a reliable psychological opinion as the basis for her determinations. The ALJ found that the state agency consultative psychiatric examiner's report to be "of little evidentiary value and are therefore unpersuasive" because "the opinions of the examiner . . . fail to offer a functional by function assessment." AR 25. She concluded that the state agency consultants' opinions were unpersuasive. AR 26-27. She also discounted the findings in Plaintiff's psychiatric exams because Plaintiff never sought in-patient treatment and her non-psychiatric clinical records did not display psychiatric symptomology. AR 24. Plaintiff's treating psychiatrist submitted a statement in support of her application that described Plaintiff's mental health diagnoses and opined that Plaintiff is unable to work. The ALJ found the report unpersuasive because the document was not a "function-by-function functional evaluations and opinion as to the issue of "disability" is reserved to the Commissioner." AR 27. In short, the ALJ rejected the opinion of every treating or examining psychiatrist in the record, leaving the Court unable to determine the basis for her findings regarding Plaintiff's mental and behavioral limitations, raising concerns that she substituted her own medical assessment for those of the actual trained physicians. The ALJ can solicit additional medical opinions if she finds evidentiary gaps in the record, but she cannot "play doctor" by drawing her own conclusions as to medical issues. *Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2018) ("ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions.") (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (remanding

because the ALJ improperly "played doctor"); *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("When an ALJ denies benefits, she must build an 'accurate and logical bridge from the evidence to her conclusion,' and she is not allowed to "play doctor" by using her own lay opinions to fill evidentiary gaps in the record.") (quoting *Clifford*, 227 F.3d at 872) (other citations omitted); This failure to build a logical bridge between the psychiatric opinions in the record, all of which the ALJ found to be unpersuasive, and the restrictions in the RFC requires remand. *See O'Connor-Spinner*, 627 F.3d at 618.

The Court is also concerned that the ALJ's analysis reveals a misunderstanding of mental illness or willful cherry-picking of the record to support her conclusion about the effects of Plaintiff's psychological difficulties. She repeatedly emphasized that Plaintiff showed an absence of what the ALJ termed "anti-social behavior" and was able to engage in some daily activities, like shopping for basic needs and living with a roommate, as demonstrative of lack of limitation. AR 21. *See, e.g., Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("Even if we accept the [single] treatment note as evidence that [the plaintiff] enjoys a few 'good days,' that evidence still offers no support for the ALJ's finding that her mental illness does not prevent her from holding a job."); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("[S]ymptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression. 'A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.'") (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)). On remand, the ALJ is also reminded that the Seventh Circuit Court of Appeals has repeatedly criticized ALJ decisions that equate a plaintiff's ability to take care of personal hygiene or household chores with the ability to work and fail to take into account "critical differences between

activities of daily living and activities in a full-time job," such as the fact that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also, e.g., Punzio*, 630 F.3d at 712 ("[The plaintiff]'s ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

**VI. Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 17], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 21st day of September, 2026.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record